UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**
AUG 1 7 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-334-GWU

CALVIN HICKS,             PLAINTIFF,

VS.      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Hicks

>   Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Hicks

Case: 6:04-cv-00334-GWU Doc #: 27 Filed: 08/17/05 Page: 3 of 12 - Page ID#: 128

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

Hicks

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Calvin Hicks, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, degenerative joint disease with hip dysplasia, Type II diabetes mellitus, and adhesive capsulitis of the left shoulder. (Tr. 14). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, accordingly, was not entitled to benefits. (Tr. 17-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE a series of hypothetical questions, ultimately accepting the answer to a question of whether a person of the plaintiff's age of 51 years, limited education, and unskilled work experience could perform any jobs if he were capable of lifting 45 pounds occasionally and 20 pounds frequently, and also had the following non-exertional impairments. (Tr. 257). He: (1) would require the option of sitting or standing at 30 minute intervals; (2) could sit, stand, and walk six hours each in an eight-hour day; (3) could not stoop, squat, bend, crawl, or climb ladders; (4) could no more than occasionally climb short flights of stairs or reach in any direction; and (6) retained the

7

ability to understand, remember, and carry out moderately complex instructions and had a "limited but satisfactory" ability to persist on tasks and tolerate work-related stress. (Tr. 257-8, 260-1). The VE responded that there were light level jobs that such a person could perform, including production assembler, production inspector, and hand packer, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 258-61).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Hicks alleged disability due to diabetes, dizziness, severe back and leg pains, and nervousness. (Tr. 67). He testified at the administrative hearing that his treating orthopedist, Dr. Jean-Maurice Page, had recommended a right hip replacement, and had indicated that he would need a left hip replacement shortly. (Tr. 235-7). He also had a back problem, and tendonitis in the left shoulder, which made it difficult to raise his left arm. (Tr. 245, 248). He had been diagnosed with diabetes several years before he stopped working, and took oral medications, but admitted that he did not follow the diabetic diet that had been prescribed for him. (Tr. 239-40). He had blurry vision at times, along with dizziness and excessive thirst. (Tr. 245). Mr. Hicks also described feelings of nervousness.

The plaintiff's treating family physician, Dr. Dennis Ulrich, submitted office notes reflecting treatment of most of these conditions, but no functional restrictions

8

Hicks

were given. An x-ray in January, 2000, showed some calcification of the left shoulder joint which could have been bursitis or arthritis (Tr. 147) and at one point Dr. Ulrich apparently investigated the possibility of claudication in the right leg after complaints of right leg pain and swelling, but it is not clear if any such problem was diagnosed. (Tr. 136-8). An x-ray of the right knee was essentially normal. (Tr. 110). Subsequently, Mr. Hicks was diagnosed with a lumbar sprain and referred to the orthopedist, Dr. Page. (Tr. 129-33).

Dr. Page obtained x-rays and a CT scan of the lumbar spine, which showed spondylosis, degenerative disc disease, and moderate spinal canal stenosis. (Tr. 106-9). Dr. Page did not submit any office notes, or physical examination results, but there are two letters from the physician written to the state agency. The first letter, dated March 11, 2002, states that the plaintiff had "several known musculoskeletal conditions, mainly spondylosis with [degenerative disc disease] at L3-L4 and L4-L5." (Tr. 151). A bone scan had been negative, and a CT scan showed some "significant spinal stenosis." (Id.). Dr. Page said that Mr. Hicks had a "known condition of bilateral hip dysplasia," severe on the right, for which surgery was recommended, but moderate on the left, and for which "time only is recommended." (Id.). His multilevel degenerative disc disease might also require surgery in the future. Dr. Page opined that Mr. Hicks would have permanent limitations on his ability to do work-related activities, which would "mainly involve no

9

stooping, squatting, bending, or crawling and no heavy lifting greater than 35-40 pounds and nothing of a repetitive nature." (Id.).

On May 15, 2002, Dr. Page reiterated his findings and gave a slightly different functional capacity assessment. (Tr. 150). The physician stated that "given the two chief musculoskeletal findings of multilevel spinal stenosis of the lumbar spine as well as that of congenital hip dysplasia the patient would be felt to be unsuitable for certain types of occupations[; h]e should never stoop, squat, bend, or crawl . . . should avoid ladder climbing or excessive stair climbing [and] should not lift weights greater than 45 pounds, and nothing of the repetitive nature." (Id.).

A state agency physician, Dr. Bobby J. Kidd, had examined the plaintiff on March 5, 2002, and did not list any functional restrictions, although his physical examination showed that the plaintiff did ambulate with a slight limp, had slight crepitus in the right hip and limited extension in this joint, and could squat only one-half normal because of pain in the right hip. (Tr. 114-16). Mr. Hicks was able to walk on his heels and toes, perform tandem gait, and stand on one leg at a time without difficulty. (Tr. 116). There were no abnormalities on examination of the shoulders, elbows, hands or wrists. (Tr. 115-16). Dr. Kidd found no diabetic or hypertensive retinopathy. (Tr. 115).

A state agency physician who reviewed much of the record, including the notes of Dr. Ulrich, Dr. Page's letters, and Dr. Kidd's examination, Dr. S. Mukherjee, concluded that the plaintiff would be capable of performing medium level exertion,

10

Hicks

and would have non-exertional restrictions including a limited ability to push and pull with the right leg, never climbing ladders, ropes, or scaffolds, occasionally stooping, crouching, and crawling, and avoiding even moderate exposure to extremes of cold and vibration. (Tr. 153-60).

On appeal, the plaintiff primarily faults the ALJ for assuming, in the hypothetical question, that the plaintiff could lift not only a maximum of 45 pounds as described by Dr. Page, but could also lift 20 pounds frequently, whereas Dr. Page had said "nothing of a repetitive nature." However, Dr. Mukherjee had considered this statement in reviewing the evidence, and commented that "this opinion has not been supported by any clinical observation." (Tr. 158). In view of the lack of office notes from Dr. Page, and the findings by Dr. Kidd on physical examination, a reasonable reviewer could have discounted Dr. Page's belief that the plaintiff could not lift any weight repetitively. The opinion of even a treating physician is not entitled to controlling weight without sufficient medical evidence to support it. Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir. 1987).

The plaintiff also asserts that by the time the hypothetical question had been modified to include a sit/stand restriction and a restriction on reaching, the VE reduced the job numbers she had originally supplied to the point that they did not represent a "significant" number of jobs. However, a review of the VE's testimony shows that the original job numbers that she had given, totaling 505,000 national jobs and 14,400 statewide jobs, were already reduced by 50 percent due to the

11

Hicks

complete prohibition of bending, stooping, squatting, and crawling in the original hypothetical. (Tr. 258). The VE then testified that these numbers would be reduced 10 percent for the sit/stand option, and another 10 percent for a limitation in handling and fine manipulation. (Tr. 260-1). The plaintiff, in his brief, erroneously begins by reducing the initial number of jobs by 50 percent, and then applying further reductions, but the ALJ's testimony is clear in context that she only envisaged a 20 percent reduction from 505,500 national jobs and 14,400 statewide jobs, which would still clearly leave a "significant" number.

The decision will be affirmed.

This the 17 day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE